UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SARAH LEBOVITS,

                      Plaintiff,

        v.

CAVALRY PORTFOLIO SERVICES, LLC,
CAVALRY SPV I, LLC,
and John Does 1-25,

                    Defendants.

No. 20-CV-01116 (KMK)

OPINION & ORDER

---

Appearances:

Kenneth Willard, Esq.
Raphael Deutsch, Esq.
Stein Saks PLLC
Hackensack, NJ
*Counsel for Plaintiff*

Thomas Dominczyk, Esq.
Brady Hermann, Esq.
Maurice Wutscher, LLP
Dedham, MA
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Plaintiff Sarah Lebovits ("Plaintiff") brings this Action against Defendants Cavalry

Portfolio Services, LLC ("Cavalry Portfolio"); Cavalry SPV I, LLC ("Cavalry SPV"); and John

Does 1–25 claiming violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.

§ 1692 *et seq.*, on behalf of herself and all others similarly situated.  (*See generally* Compl. (Dkt.

No. 1).)  Before the Court is Defendants' Motion To Compel Arbitration and Stay this Action

and Motion To Dismiss (the "Motions").  (*See* Defs.' Motions (Dkt. Nos. 19–20).)

For the reasons explained herein, Defendants' Motion To Compel is granted and Defendants' Motion To Dismiss is denied without prejudice.

## I.  Background

### A.  Factual Background

The following facts are taken from the Complaint and from the Parties' submissions.  The Court recounts only the facts that are relevant to the instant Motions.

Plaintiff is a New York resident.  (Compl. ¶ 7.)  Defendants Cavalry Portfolio and Cavalry SPV regularly engage in business with the principal purpose to attempt to collect debts alleged to be due to another, thus making them "debt collector[s]" as defined in the FDCPA.  (*Id.* ¶¶ 8–12.)  Plaintiff brings claims against John Does 1–25, which are fictitious names of individuals and businesses alleged for the purpose of substituting names of Defendants in future discovery.  (*Id.* ¶ 12.)

Plaintiff seeks to represent a class consisting of all individuals with addresses in the State of New York to whom Defendant Cavalry Portfolio sent an initial collection letter attempting to collect a consumer debt on behalf of Defendant Cavalry SPV, which allegedly makes it unclear as to whom the consumer should direct their disputes of the alleged debt.  (*Id.* ¶¶ 13–14(a)–(d).)  The class includes anyone who was sent a letter on or after a date one year prior to the filing of this Action and on or before a date 21 days after the filing of this Action.  (*Id.* ¶ 14(e).)  Plaintiff claims that the proposed class meets the certification criteria of numerosity, common questions of law, typicality, adequacy, and the superiority of adjudicating the case as a class action.  (*Id.* ¶ 19.)

Plaintiff is the account holder of a Citi Diamond Preferred Card Account (the "Account").  (Decl. of B Gauper in Supp. of Mot. ("Gauper Decl.") ¶ 4 (Dkt. No. 19-2).)

Citibank issued the Account to Plaintiff on or about September 7, 2016.  (*Id.*)  On September 8,

2016, Plaintiff was sent a credit card agreement ("Card Agreement") by Citibank.  (*Id.*)  The

Card Agreement is governed by federal and South Dakota law.  (Card Agreement 9 (Dkt. No.

19-2, Ex. 1).)  Within the Card Agreement is an arbitration clause (the "Arbitration Clause").

The Arbitration Clause reads in relevant part:

> **PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.**
>
> This section provides that disputes may be resolved by binding arbitration.
> Arbitration replaces the right to go to court, have a jury trial or initiate or participate
> in a class action. In arbitration, disputes are resolved by an arbitrator, not a judge
> or jury. Arbitration procedures are simpler and more limited than in court. This
> arbitration provision is governed by the Federal Arbitration Act (FAA), and shall
> be interpreted in the broadest way the law will allow.
>
> **Covered claims**
>
> • **You or we may arbitrate** any claim, dispute or controversy between you and us
> arising out of or related to your Account, a previous related Account or our
> relationship (called "Claims").
>
> . . .
>
> Except as stated below, all Claims are subject to arbitration, no matter what legal
> theory they're based on or what remedy (damages, or injunctive or declaratory
> relief) they seek, including Claims based on contract, tort (including intentional
> tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or
> any other sources of law . . . .

(Card Agreement 8) (emphasis in original).  Plaintiff received the credit card for use of the

Account and made purchases as evidenced by account statements ("Account Statements") issued

to Plaintiff.  (*See generally* Gauper Decl.; *see also* Dkt. No. 19-2, Ex. 2, Account Statements).

The first use of the Account, a balance transfer, posted to the Account on or about September 21,

2016.  (Gauper Decl. ¶ 11; *see also* Account Statements.)  On or about May 17, 2019, Citibank

N.A. ("Citibank") sold and assigned its rights, title, and interest in Plaintiff's Account to Cavalry

SPV.  (Defs.' Mem. of Law in Supp. of Mot. To Compel Arb. ("Defs.' Arb. Mem.") 3 (Dkt. No.

19-1); (Bill of Sale and Assignment) (Dkt. No. 19-2, Ex. 3).)  Cavalry SPV subsequently assigned the Account to Cavalry Portfolio for collection.  (Compl. ¶ 27.)  Some time prior to May 18, 2019, Plaintiff incurred an obligation to Citibank.  (*Id.* ¶ 23.)  There is no allegation in Plaintiff's Complaint or Memorandum of Law that this Card Agreement was returned as undeliverable.  (Gauper Decl. ¶ 8; *see generally* Pl.'s Mem. of Law in Opp'n to Mot. To Compel Arb. ("Pl.'s Arb. Mem.") (Dkt. No. 24).)  The Citibank obligation arose out of Plaintiff's credit card transactions.  (Compl. ¶ 24.)  The Citibank obligation is a "debt" as defined under the FDCPA.  (*Id.* ¶ 25.)  Defendant Cavalry SPV contracted Defendant Cavalry Portfolio to collect the debt.  (*Id.* ¶ 27.)  Defendants Cavalry Portfolio and Cavalry SPV collect and attempt to collect debts incurred or alleged to have been incurred for personal, family, or household purposes on behalf of creditors.  (*Id.* ¶ 28.)

On or about May 18, 2019, Defendant Cavalry Portfolio sent Plaintiff a collection letter (the "Letter") regarding the alleged debt owed to Cavalry SPV.  (*Id.* ¶ 29.)  The Letter advises that Defendant Cavalry SPV had purchased the alleged debt and that Defendant Cavalry Portfolio would be servicing same.  (*Id.* ¶ 30.)  Plaintiff alleges that under the FDCPA, when a debt collector solicits payment from a consumer, it must, within five days of the initial communication, provide the consumer with a written validation notice which must include certain information, such as the amount of the debt, the name of the creditor to whom the debt is owed, among other pieces of information.  This letter is known as a "G-Notice."  (*Id.* ¶ 31.)  If the consumer disputes the debt within 30 days, the debt collector shall cease collection until the debt collector obtains verification of the debt and such verification is mailed to the consumer. (*Id.* ¶ 32.)  The Letter contained all of the requirements of the G-Notice.  (*Id.* ¶ 33.)

The Letter stated in pertinent part that in accordance with the FDCPA Cavalry is prohibited from engaging in certain conduct.  The Letter explained that "Cavalry is committed to providing you with excellent customer service, which includes treating you in a fair and respectful manner."  (*Id.* ¶ 35.)  The Letter further said:

> Unless you notify Cavalry within thirty days after receiving this letter that you dispute the validity of this debt or any portion thereof, Cavalry will assume this debt is valid. If you notify Cavalry in writing within thirty days from receiving this notice that you dispute the validity of this debt or any portion thereof, Cavalry will obtain verification of the debt or a copy of a judgment, if applicable, and mail you a copy of such verification or judgment. If you request it from Cavalry in writing within thirty days after receiving this notice, Cavalry will provide you with the name and address of the original creditor, if different from the current creditor.

(*Id.*)  Plaintiff alleges that the use of "Cavalry" is deceptive and misleading as the Plaintiff would not know whether she should contact Cavalry Portfolio Services, LLC, or Cavalry SPV to exercise her rights under the G-Notice.  (*Id.* ¶ 36.)  Plaintiff further alleges that if she contacted the incorrect entity to exercise her rights under the G-Notice, she effectively would waive these rights.  (*Id.* ¶ 37.)  Plaintiff also alleges that the Letter fails to effectively convey the Plaintiff's rights and to whom she should direct her dispute triggering those very same rights.  (*Id.* ¶ 38.)  Specifically, Plaintiff alleges that the instruction to contact "Cavalry" without any specification is deceptive because there is more than one reasonable interpretation to the term "Cavalry," one of which is inaccurate.  (*Id.* ¶ 39.)  According to Plaintiff, Defendants made "deceptive and misleading representations" in the G-Notice required by the FDCPA and as a result Plaintiff has been damaged.  (*Id.* ¶ 40–41.)[1]  Based on these factual allegations, Plaintiff claims Defendants violated 15 U.S.C. §§ 1692(e)–(g) *et seq*.  (*Id.* ¶¶ 42–51.)

---

[1] Plaintiff states that the use of "Cavalry," is "deceptive and misleading" in the G-Notice sent to her.  But Plaintiff also uses the terms "Defendant" and "Defendants" interchangeably without specifying which Defendant she is referencing.  For the purpose of resolving the instant Motions, the Court will assume that Plaintiff intended to allege claims against all Defendants.

## B.  Procedural Background

Plaintiff filed her Complaint on February 9, 2020.  (Compl. (Dkt. No. 1).)  On March 25, 2020 and April 5, 2020, Defendants filed Pre-Motion Letters.  (Dkt. Nos. 10, 13).  After Plaintiff filed responses to Defendants, (Dkt. Nos. 11, 16), the Court held a Pre-Motion Conference on May 11, 2020, (*see* Dkt. (minute entry for May 11, 2020)).

Pursuant to the briefing schedule set by the Court, Defendants filed the instant Motions and accompanying Memoranda of Law in Support on June 30, 2020.  (Dkt. Nos. 19–20).  On August 20, 2020, Plaintiff filed her Memorandum in Opposition to the Motion To Compel Arbitration.  (Pl.'s Arb. Mem. (Dkt. No. 23).)  On the same day, Plaintiff filed her Memorandum in Opposition to the Motion To Dismiss.  (Dkt. No. 24).  On September 11, 2020, Defendants filed their Replies.  (Dkt. Nos. 25–26).

## II.  Discussion

## A.  Legal Standard

The Federal Arbitration Act ("FAA") provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.[2]  The FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts."  *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).  However, "the FAA does not require parties to arbitrate when they have not agreed to do so."  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (citation and quotation marks omitted); *see also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) ("[A]rbitration is a matter of

---

[2] Section 2 of the FAA applies to arbitration agreements "evidencing a transaction involving [interstate] commerce."  9 U.S.C. § 2.  Plaintiff resides in the State of New York, (Compl. ¶ 7), and Citibank is domiciled in South Dakota, (Gauper Decl. ¶ 1).  Thus, this requirement is satisfied.  Further, the Card Agreement specifies that the arbitration of disputes provision "is governed by the [FAA]."  (Card Agreement 8.)

contract and a party cannot be required to submit to arbitration any dispute which he has not

agreed so to submit." (citations omitted)).

Defendants seek to compel arbitration and stay this Action.  (Defs.' Arb. Mem. 1.)  In

resolving this type of motion, courts "appl[y] a standard similar to that applicable for a motion

for summary judgment."  *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003).  A court

must therefore "consider all relevant, admissible evidence submitted by the parties" and "draw

all reasonable inferences in favor of the non-moving party."  *Nicosia*, 834 F.3d at 229 (citation

omitted).  Under this standard, the Court evaluates "[a]llegations related to the question of

whether the parties formed a valid arbitration agreement . . . to determine whether they raise a

genuine issue of material fact."  *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012).

"If there is a genuinely disputed factual issue whose resolution is essential to the determination

of the applicability of an arbitration provision, a trial as to that issue will be necessary . . . ."

*Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 172

(2d Cir. 2011); *see also* 9 U.S.C. § 4 ("If the making of the arbitration agreement . . . [is] in

issue, the court shall proceed summarily to the trial thereof.").  However, "where the undisputed

facts in the record require the matter of arbitrability to be decided against one side or the other as

a matter of law, [a court] may rule on the basis of that legal issue and avoid the need for further

court proceedings."  *Wachovia Bank*, 661 F.3d at 172 (citation and quotation marks omitted); *see*

*also* 9 U.S.C. § 4 ("[U]pon being satisfied that the making of the agreement for arbitration or the

failure to comply therewith is not in issue, the court shall make an order directing the parties to

proceed to arbitration in accordance with the terms of the agreement."); *Ryan v. JPMorgan*

*Chase & Co.*, 924 F. Supp. 2d 559, 561–62 (S.D.N.Y. 2013) ("[A] [c]ourt must grant a motion to

compel arbitration if the pleadings, discovery materials before the [c]ourt, and any affidavits

show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law.").

B.  Analysis

The Parties' dispute essentially concerns a "[q]uestion[] of arbitrability," which is a "term of art covering 'disputes about whether the parties are bound by a given arbitration clause' as well as 'disagreements about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.'" *Pincaro v. Glassdoor, Inc.*, No. 16-CV-6870, 2017 WL 4046317, at *5 (S.D.N.Y. Sept. 12, 2017) (alterations omitted) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)).  To answer this question, courts in the Second Circuit generally "follow a two-part test," whereby they consider "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Express Fin. Advisors Secs. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011); *see also Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 299 (2010) (noting that a court "should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue" (emphasis omitted)).  "If federal statutory claims are alleged, the court must also assess whether Congress intended to exempt such claims from arbitration." *Clookey v. Citibank, N.A.*, No. 14-CV-1318, 2015 WL 8484514, at *2 (N.D.N.Y. Dec. 9, 2015) (citing *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004)), *reconsideration denied*, 2016 WL 3365438 (N.D.N.Y. June 16, 2016).

Defendants contend that the arbitration provision in the Card Agreement is valid and enforceable, and that Plaintiff's claims fall within its scope.  (Defs.' Arb. Mem. 6–13.)  Plaintiff

argues that the provision is "extremely broad," and that "no reasonable person would have agreed to binding arbitration over virtually any claim with Citibank and its assigns, now or in the future." (Pl.'s Arb. Mem. 3, 7.)

### 1.  Validity of the Arbitration Agreement

"Whether one can be bound by an arbitration clause is usually determined by looking at generally accepted principles of contract law." *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) (collecting cases).  Pursuant to these principles, "a party is bound by the provisions of a contract that he signs, unless he can show special circumstances that would relieve him of such an obligation." *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 845 (2d Cir. 1987), *abrogated on other grounds by Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991); *see also Cap Gemini Ernst & Young U.S. LLC v. Arentowicz*, No. 04-CV-299, 2004 WL 1386145, at *5 (S.D.N.Y. June 22, 2004) ("An individual who signs a contract is presumed to know its contents and assent to them, unless he can show special circumstances, such as duress or coercion, which would justify non-enforcement of the contract." (citation and quotation marks omitted)).  In the context of evaluating whether "special circumstances" sufficient to warrant relief from an arbitration agreement exist, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).  "[T]he party seeking to compel arbitration has the burden of demonstrating by a preponderance of the evidence the existence of an agreement to arbitrate." *Biggs v. Midland Credit Mgmt., Inc.*, No. 17-CV-340, 2018 WL 1225539, at *8 (E.D.N.Y. Mar. 9, 2018) (citation omitted); *Ferro v. Allied Interstate, LLC*, No. 19-CV-49, 2019 WL 3021234, at * 2 (E.D.N.Y. July 10, 2019) ("The moving party has the initial burden of showing that an agreement to arbitrate exists." (alterations and citation

omitted)).  "Whether the [P]arties agreed to arbitrate is determined by state contract law." *Kurz v. Chase Manhattan Bank USA, N.A.*, 319 F. Supp. 2d 457, 461 (S.D.N.Y. 2004) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Before the Court addresses the validity of the Card Agreement, the Court must evaluate whether Citibank could assign its rights to Defendants.  Plaintiff disputes Citibank's ability to assign its rights under the Card Agreement to third parties Cavalry Portfolio and Cavalry SPV. (Pl.'s Arb. Mem. 1.)  As a general rule, when a contract right is assigned, the assignor's right to performance by the obligor is extinguished and the assignee acquires that right.  *See* Restatement (Second) of Contracts § 317(1).  Put more succinctly, "the assignee stands in the same shoes as the assignor."  *See Kroeplin Farms Gen. P'ship v. Heartland Crop. Ins.*, 430 F.3d 906, 911 (8th Cir. 2005) (alteration and citation omitted); *see also Lee v. Sioux Falls Motor Co.*, 274 N.W. 614, 616 (S.D. 1937).  An assignee can obtain no greater rights than the assignor had at the time of assignment.  *See Kobbeman v. Oleson*, 574 N.W.2d 633, 636 (S.D. 1998); *Heinzman v. Howard*, 348 N.W.2d 147, 148 (S.D. 1984) (citing 77 Am. Jur. 2d Vendor and Purchaser § 389 (1975)); *Tripp v. Sieler*, 161 N.W. 337, 340 (S.D. 1917).

The express terms of the Card Agreement provide that Plaintiff's Account was assignable: "**Assignment.** We may assign any or all of our rights and obligations under this Agreement to a third party."  (Card Agreement 9) (emphasis in original).  Defendants have offered evidence to directly rebut this assertion as the Card Agreement states explicitly that "[t]his arbitration provision shall survive changes in this Agreement and termination of the Account . . .  and any sale of your Account, or amounts owed in your Account, to another person *or entity.*"  (*Id.*) (emphasis added).

10

Because of this assignment, Defendants stand in the shoes of Citibank, and hold the right to enforce the Arbitration Clause contained within the Card Agreement under South Dakota law. *See Kroeplin Farms*, 430 F.3d at 911–912 (holding that under South Dakota law a valid assignment grants the assignee the right to enforce the original agreement).  Indeed, courts routinely hold that entities that purchase and take assignment of a consumer account can enforce an arbitration provision contained within the account agreement. *See, e.g., Biggs*, 2018 WL 1225539, at *7 ("Here, the Account Agreement states, in relevant part, that Synchrony 'may sell, assign or transfer any or all of our rights or duties under this Agreement or your account, including our rights to payments.'"); *Marcario v. Midland Credit Mgmt., Inc.*, No. 17-CV-414, 2017 WL 4792238, at *5 (E.D.N.Y. Oct. 23, 2017) ("[T]he Defendants have adequately established that the Plaintiff's credit card account was assigned to them and they can thus enforce the Arbitration Agreement as assignees."); *Zambrana v. Pressler & Pressler, LLP*, No. 16-CV-2907, 2016 WL 7046820, at *5 (S.D.N.Y. Dec. 2, 2016) (holding that assignee to a credit card agreement can compel arbitration); *Martin v. Cavalry SPV I, LLC*, No. 13-CV-88, 2014 WL 1338702, at *8 (E.D. Ky. Mar. 31, 2014) (holding that assignee of credit card account can enforce arbitration provision); *Caudill v. Cavalry SPV I, LLC*, No. CV-14-32, 2014 WL 4230811, at *7 (E.D. Ky. Aug. 25, 2014) (upholding a contract with clear provisions for assignment to subsequent parties, including an arbitration provision).  Given that the Card Agreement explicitly states that Citibank may "assign any or all of [its] rights and obligations under this [Card] Agreement to a third party" and that Plaintiff entered into such a contract, which is discussed further below, the Court finds that there was a valid assignment of rights of Plaintiff from Citibank to Defendants.  (Card Agreement 9.)

Next, the Court turns to the Card Agreement itself.  Defendants have submitted "uncontroverted evidence show[ing] that [P]laintiff [applied for and] opened a credit card account."  *Biggs*, 2018 WL 1225539, at *8.  (*See generally* Gauper Decl.; *see also* Gauper Decl. Exs. 1–2.)  Plaintiff does not appear to dispute that the Card Agreement was sent to her or that she received it.  (Dkt. No. 19-2, at 5; *see also* Pl.'s Arb. Mem. 2–3); *see Gartly v. Selip & Stylianou LLP*, No. 18-CV-1806, 2018 WL 5777033, at *4 (E.D.N.Y. Nov. 2, 2018) (finding that there was uncontroverted evidence that the bank sent the plaintiff a credit card agreement and credit card in a single mailing, which was sufficient to establish that the plaintiff received the agreement); *see also Biggs*, 2018 WL 1225539, at * 8 ("Proof of mailing may be established either by offering testimony of the person who actually mailed the letter or by showing that it was the regular office practice and procedure to mail such a letter." (citation omitted)).  By its express terms, the Card Agreement took effect upon Plaintiff's use of the card or her failure to cancel it within 30 days.  (Card Agreement 3 (stating that "[t]his Agreement takes effect once you use your Card.  Even if you don't use your Card, this Agreement will take effect unless you contact us to cancel your Account within 30 days after we sent you this Agreement").)  This language binds Plaintiff to the terms of the agreement.  S.D. Codified Laws § 54-11-9 ("The use of an accepted credit card or the issuance of a credit card agreement and the expiration of thirty days from the date of issuance without written notice from a card holder to cancel the account creates a binding contract between the card holder and the card issuer with reference to any accepted credit card, and any charges made with the authorization of the primary card holder."); *see also Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1199 (S.D. Cal. 2013) (under South Dakota law "continued use of a credit [card] account" constitutes assent to arbitration).

The Court thus finds that the Card Agreement is a valid contract and that Plaintiff is bound by it and the Arbitration Clause.

### 2.  Scope of the Arbitration Agreement

Next, the Court must determine whether the dispute falls within the Arbitration Clause. South Dakota, like federal law, strongly favors arbitration.  The Supreme Court of South Dakota has "consistently favored the resolution of disputes by arbitration," noting "an overriding policy favoring arbitration when a contract provides for it." *Rossi Fine Jewelers, Inc. v. Gunderson*, 648 N.W.2d 812, 814 (S.D. 2002).  Also, similar to federal law, under South Dakota law "[i]f there is doubt whether a case should be resolved by traditional judicial means or by arbitration, arbitration will prevail." *Id.*

"To determine if a dispute falls within the scope of an arbitration agreement, a court should classify the particular clause as either broad or narrow." *Boss Worldwide LLC v. Crabill*, No. 19-CV-2363, 2020 WL 1243805, at *3 (S.D.N.Y. Mar. 16, 2020) (quotation marks omitted) (quoting *JLM Indus.*, 387 F.3d at 172).  "'Broad' clauses purport to refer all disputes to arbitration; 'narrow' clauses limit arbitration to specific types of disputes." *Camferdam v. Ernst & Young Int'l, Inc.*, No. 02-CV-10100, 2004 WL 1124649, at *1 (S.D.N.Y. May 19, 2004).  If the agreement is narrow, the Court must determine whether the issue is within the purview of the arbitration clause. *Id.*  When "the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) (citation and quotation marks omitted).  "Indeed, if the arbitration clause is broad, it is presumptively applicable to disputes involving matters going beyond the interpretation or

enforcement of particular provisions of the contract which contains the arbitration clause." *Boss Worldwide*, 2020 WL 1243805, at *3 (quotation marks omitted) (quoting *JLM Indus.*, 387 F.3d at 172). With broad agreements, "arbitration of even a collateral matter will be ordered if the claim alleged 'implicates issues of contract construction or the parties' rights and obligations under it.'" *Serebryakov v. Golden Touch Transp. of NY, Inc.*, No. 12-CV-3990, 2015 WL 1359047, at *6 (E.D.N.Y. Mar. 24, 2015) (citation omitted).

The Arbitration Clause covers "any claim, dispute or controversy between you and us arising out of or related to your Account, a previous related Account or our relationship." (Card Agreement 8.) This type of "expansive language . . . suggest[s] a broad arbitration clause." *Louis Dreyfus*, 252 F.3d at 225; *Marcus v. Frome*, 275 F. Supp. 2d 496, 504 (S.D.N.Y. 2003) ("[A]ny dispute, controversy or claim arising out of or relating to this Agreement" is a broad arbitration clause.); *Vera v. Saks & Co.*, 218 F. Supp. 2d 490, 494 (S.D.N.Y. 2002) ("Any dispute . . . arising out of or relating to this Agreement" found to be a broad arbitration clause) *aff'd*, 335 F.3d 109 (2d Cir. 2003); *ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 26 (2d Cir. 2002) ("[A]ny dispute [that] shall arise between the parties . . . with reference to the interpretation of this Agreement or their rights with respect to any transaction involved" held to be a broad arbitration clause); *cf. U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.*, 182 F.R.D. 97, 101 (S.D.N.Y. 1998) ("[A]ny dispute arising under this charter" is a broad arbitration clause.), *aff'd*, 241 F.3d 135 (2d Cir. 2001); *see also Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998) ("Any dispute, controversy or claim arising under or in connection with th[e] Agreement" is a broad arbitration clause.), *abrogated on other grounds by Katz v. Cellco P'ship*, 794 F.3d 341 (2d Cir. 2015); *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) ("Any claim or controversy

arising out of or relating to th[e] agreement . . . ." is a broad arbitration clause).  This language

thus "evidences the parties' intent to have arbitration serve as the primary recourse for disputes

connected to [Card Agreement]."  *Louis Dreyfus*, 252 F.3d at 225.  Moreover, there is no

language in the Arbitration Clause that contains any words of limitation, thus further establishing

the broad scope of this provision and its applicability to *any* dispute related to the credit card's

use.  (Card Agreement 8–9); *see, e.g., Dill v. JPMorgan Chase Bank, N.A.*, No. 19-CV-10947,

2020 WL 4345755, at *6 (S.D.N.Y. July 29, 2020) (finding an arbitration agreement

"indisputably broad" which included language such as "any dispute relating in any way to your

account or transactions will be resolved by binding arbitration" and "ALL DISPUTES, EXCEPT

AS STATED BELOW, MUST BE RESOLVED BY BINDING ARBITRATION" (emphases

omitted)); *see also Gaul v. Chrysler Fin. Servs. Ams. LLC*, 657 F. App'x 16, 17 (2d Cir. 2016)

(summary order) (explaining how an arbitration agreement containing language that "any claim

or dispute . . . which arises out of or relates to [the agreement] or any resulting transaction or

relationship arising out of [the agreement]" was broad); *Holick v. Cellular Sales of N.Y., LLC*,

802 F.3d 391, 394 (2d Cir. 2015) ("[T]he arbitration clause at issue here is broad because it

applies to '[a]ll claims, disputes, or controversies arising out of, or in relation to this document . .

. .'" (second alteration in original)).  Also, it is well-settled that statutory claims, like those under

the FDCPA, are subject to arbitration under the FAA.  *Shetiwy v. Midland Credit Mgmt.*, 959 F.

Supp. 2d 469, 475 (S.D.N.Y. 2013) ("[A] generalized congressional intent to vindicate statutory

rights [such as those in the FDCPA] cannot override the FAA's mandate that courts enforce

arbitration clauses, including those with class action waivers, as written.").  The Supreme Court

has held that the duty of courts "to enforce arbitration agreements is not diminished when a party

bound by an [arbitration] agreement raises a claim founded on statutory rights."  *Shearson/Am.*

*Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *see also Gilmer*, 500 U.S. at 26 ("It is by now clear that statutory claims may be the subject of an arbitration agreement . . . ."). The FAA mandate may be overridden, only if the party opposing arbitration can show that "Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue," *Shearson/Am. Express*, 482 U.S. at 227, which Plaintiff has not done here.

Plaintiff's claims clearly "relate to" her Account, because the allegations in her Complaint involve the effort to "collect the alleged debt" which Plaintiff incurred on her Account. (Compl. ¶ 27.) Plaintiff's dispute over the collection of this debt certainly falls within the Arbitration Clause, as she agreed that

> all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law . . . .

(Card Agreement 8.) The Court thus finds that the Arbitration Clause, as applied by Defendants in this case, is enforceable, and that Plaintiff's claims fall within its scope. The Court therefore grants the Motion and stays this Action pending the arbitration. *See* 9 U.S.C. § 3 ("[T]he court . . . upon being satisfied that the issue . . . is referable to arbitration under . . . an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ."); *see also Abel v. All Green Bldg. Servs. of N.Y. LLC*, No. 16-CV-8522, 2017 WL 5468764, at *2 (S.D.N.Y. Nov. 14, 2017) (finding claims arbitrable but denying motion to dismiss and staying litigation pending arbitration); *Katz*, 794 F.3d at 345–47 (holding that the FAA "mandate[s] a stay of proceedings when all of the claims in an action have been referred to arbitration").

III.  Conclusion

For the foregoing reasons, the Court grants Defendants' Motion To Compel Arbitration.

The case is stayed pending arbitration.  Defendants' Motion To Dismiss is denied without

prejudice.  The Clerk of Court is respectfully directed to terminate the pending Motions.  (*See*

Dkt. Nos. 19–20).

SO ORDERED.

DATED:     March 29, 2021
           White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

17